**STATE of North Dakota, Plaintiff and Appellee**

v.

**Harry M. COX, Jr., Defendant and Appellant**

Crim. No. 940294.

Supreme Court of North Dakota.

June 1, 1995.

Thomas E. Merrick of Paulson and Merrick, Jamestown, for defendant and appellant.

Robert A. Freed, Asst. State's Atty., Jamestown, for plaintiff and appellee.

LEVINE, Justice.

Harry M. Cox, Jr., appeals from a jury verdict entered September 23, 1994, finding him guilty of the crime of preventing arrest. We affirm.

At approximately 11:00 p.m., Jamestown police officer Thomas Nagel was dispatched to Holiday Park Village, a mobile home park, to investigate a complaint of loud music coming from trailer # 406. As Officer Nagel entered the mobile home park, he rolled down his car window and heard music coming from inside the trailer. When he pulled up next to the trailer, Nagel noticed that lights were on inside the trailer and several people were present. Nagel climbed the steps to a small porch and knocked on the entryway door.[1]

Although no one immediately answered the door, someone inside the trailer closed the curtains and another person, later identified as Harry M. Cox, Jr., locked the entryway door and shut off the light inside the entryway. Nagel radioed to dispatch that the door had been locked and the residents refused to open it. He continued to knock on the entryway door until Cox finally opened it, remaining just inside the threshold of the entryway door, and asked Nagel what he wanted.[2] Nagel was standing on a small porch just outside of the entryway door.

Nagel asked Cox if he were the owner of the trailer. Cox told Nagel that he did not own the trailer; however, after further questioning, Cox admitted that he lived in the trailer. Nagel told Cox that there was a complaint about the loud music, and asked Cox to turn down the volume. Cox insisted that the music was not loud and refused to reduce the volume. Nagel explained to Cox that if there were another complaint about the music, Cox could be arrested for violating the Jamestown loud-noise ordinance. Cox continued to refuse and he apparently told Nagel, in no uncertain terms, that he was not going to turn down the music, and that if Nagel returned, Cox would not answer the door and Nagel would be unable to arrest him.[3]

Nagel informed Cox that he was under arrest. The testimony from the suppression hearing indicates that the facts are in dispute over where Nagel was standing at the time of the arrest. Nagel testified that he was still outside of the entryway, but Cox testified that Nagel was inside of the entryway. What is not disputed, however, is Nagel did not have an arrest warrant.

Either before or after Nagel told Cox he was under arrest, Cox pulled away, swore at Nagel, and attempted to close the entryway door on Nagel. Nagel was caught between the door frame and the door, but he managed to push the door open and tried to grab Cox. Cox slipped away and went through the second door into the mobile home, slamming the door shut on Nagel. Nagel opened the sec-

---

1. The mobile home had an 8′ × 10′ enclosed entryway attached to the front door of the trailer. The entryway is a separate structure which creates an enclosed hallway attached to the main portion of the trailer. In order to enter the living area of the trailer, occupants would have to pass through both the entryway door and a second door leading into the mobile home itself. Nagel knocked on the entryway door.

2. Officer Nagel testified that when Cox answered the door he asked, "what the f— do you want?" When asked his name, Cox replied, "You don't f—ing need to know." Cox admitted at the pretrial suppression hearing that he had "some sort of slight attitude toward … officers to start with."

3. Officer Nagel testified, and Cox admitted during cross-examination at the pretrial suppression hearing, that in response to Nagel's instruction to turn down the volume, Cox said, "F— you, the music isn't loud…. F— you, I'm not turning the noise down. It ain't loud."

ond door and followed Cox into the kitchen area of the mobile home. During this struggle, Nagel radioed dispatch to request assistance. Once inside, Nagel again informed Cox that he was under arrest and that he had to come to his patrol car. Cox retreated against a kitchen counter and continued to shout expletives at Nagel, indicating that he would not go with Nagel and Nagel should get out of his house. The testimony was conflicting, but it is apparent that a struggle ensued with Cox alternatively taking fighting stances with fists clenched, and backing away in an attempt to elude Nagel's grasp, and Nagel attempting to subdue Cox. Nagel testified that Cox threatened him several times. Their struggle led Nagel and Cox down the hallway of the trailer into a back bedroom of the mobile home. Cox attempted to slam the bedroom door on Nagel; but, Nagel pushed his way into the bedroom and the two continued to struggle. In the bedroom, Cox struck Nagel in the face, knocking his glasses off and causing a minor laceration to Nagel's face. Two other police officers arrived at this time, and, with their assistance, Cox was handcuffed and led to a patrol car.

Cox was charged with preventing arrest.[4] Prior to trial, Cox brought a motion to dismiss the charge and to suppress the threats and statements he made to Nagel during their struggle inside his trailer home, alleging that they were the products of an illegal, warrantless arrest. The trial court denied the motion, reasoning that the alleged illegality of the police conduct is a statutory defense to the charge of preventing arrest. Relying on our decision in State v. DuPaul, 509 N.W.2d 266 (N.D.1993), the trial court reasoned that the unlawfulness of the police conduct is inappropriate for pretrial determination because it is a factual issue to be determined by the factfinder, in this case, the jury. A jury trial was held and Cox was found guilty of preventing arrest.

On appeal, Cox argues that the trial judge should have held that Officer Nagel's warrantless arrest of him was unlawful as a matter of law, and either suppressed the evidence obtained subsequent to the arrest or dismissed the charge entirely.

Cox was charged with violating NDCC § 12.1–08–02(1), which says, in part:

"A person is guilty of a class A misdemeanor if, with intent to prevent a public servant from effecting an arrest of himself or another for a misdemeanor or infraction, or from discharging any other official duty, he creates a substantial risk of bodily injury to the public servant or to anyone except himself, or employs means justifying or requiring a substantial force to overcome resistance to effecting the arrest or the discharge of the duty."

Cox contends that Officer Nagel unlawfully arrested him in his home without a warrant, in violation of the Fourth Amendment, and that this unlawful conduct creates a defense to the crime of preventing arrest under NDCC § 12.1–08–02(2), which says:

"It is a defense to a prosecution under this section that the public servant was not acting lawfully, but it is no defense that the defendant mistakenly believed that the public servant was not acting lawfully. A public servant executing a warrant or other process in good faith and under color of law shall be deemed to be acting lawfully."

■■■ Ordinarily, the lawfulness of police conduct raised in a pretrial hearing is a question of law for the trial court to determine, after it resolves disputed facts. *Blackwell v. Barton,* 34 F.3d 298, 305 (5th Cir. 1994); *United States v. Carrillo,* 902 F.2d 1405, 1412 (9th Cir.1990); *United States v. McKinnell,* 888 F.2d 669, 672 (10th Cir.1989); *State v. Johnson,* 531 N.W.2d 275 (N.D.1995); *State v. Birk,* 484 N.W.2d 834, 837 (N.D. 1992); *State v. Mische,* 448 N.W.2d 415, 417 (N.D.1989); *City of Langdon v. Delvo,* 390 N.W.2d 51, 53 (N.D.1986). However, when the lawfulness of the police conduct has a bearing on the ultimate question of the defendant's guilt or innocence, the jury must be permitted to resolve any factual disputes con-

---

4. Cox was also charged with violating Jamestown City Ordinance 22–22, Noise Prohibited. That charge was dismissed, however, when the ordinance was determined to be void for impermissibly superseding state law contrary to NDCC § 12.1–01–05.

cerning the lawfulness of the police conduct.[5] *Hoover v. Garfield Heights Mun. Ct.*, 802 F.2d 168, 174 (6th Cir.1986); *Warren v. City of Lincoln, Neb.*, 816 F.2d 1254, 1261 (8th Cir.1987); *United States v. Span*, 970 F.2d 573, 581 (9th Cir.1992). *See also State v. Kummer*, 481 N.W.2d 437, 441 (N.D.1992) [entrapment]. *See State v. Hoffman*, 116 Wash.2d 51, 804 P.2d 577, 607 (1991); *State v. Engholm*, 290 N.W.2d 780, 784 (Minn. 1980). Only when the facts are not in dispute may the trial court resolve the issue as a matter of law. *Thompson v. Reuting*, 968 F.2d 756, 759 (8th Cir.1992). *See State v. Ritter*, 472 N.W.2d 444 (N.D.1991). *See also Brown v. City of Oklahoma City*, 721 P.2d 1346, 1349 (Okla.App.1986); *Huskinson v. Vanderheiden*, 197 Neb. 739, 251 N.W.2d 144, 146 (1977).

■ Under NDCC § 12.1–08–02(2), the lawfulness of police conduct is a factual defense which is inappropriate for pretrial determination and subsequent suppression of evidence or dismissal. *State v. DuPaul*, 509 N.W.2d 266 (N.D.1993); *Ritter*, 472 N.W.2d 444. Although, traditionally, the remedy for constitutional violations has been exclusion of the evidence derived from the unlawful conduct, the remedy for unlawful official conduct in a preventing-arrest case is to permit the defendant to raise the factual defense of unlawfulness.[6] As we explained in *Ritter*:

> "These defenses do not depend on judicial suppression of evidence or dismissal of charges. Rather, they depend upon full presentation of the facts to the trier of fact, usually the jury, for determination of the independent nature of the charged offense. Official misconduct is a justification defense to a charge of resisting arrest." *Ritter*, 472 N.W.2d at 453.

■ This case bears a striking resemblance to *Ritter*, in which the trial court, upon determining that Ritter had been unlawfully detained by police officers, dismissed the charge of preventing arrest against him. We reversed the dismissal and remanded for trial because the proper remedy for the unlawful police conduct was not suppression of the evidence or dismissal, but rather, allowing Ritter to raise the issue of the unlawfulness of the police conduct to the jury as a justification defense to the preventing-arrest charge. *Id.* We recognized that the long-standing remedy for constitutional violations of the Fourth Amendment was the exclusionary rule, but pointed out "[f]orceful resistance to an unlawful search or seizure is no longer automatically excused, as a matter of law, by exclusion of related evidence or by judicial dismissal." *Id.* at 452. *See* 1 Working Papers of The National Commission on Reform of Federal Criminal Laws, pp. 261–65 (Study Draft, 1970).

Similarly, in *DuPaul*, we reversed the pretrial dismissal of a preventing-arrest charge because the unlawfulness of the police conduct should have been presented to the jury as a defense of justification, cautioning:

> "A pretrial motion to dismiss cannot be converted into a summary trial of evidence, thereby depriving the fact finder, whether jury or judge, of its exclusive function of determining factual questions which have a bearing on a defendant's guilt or innocence." 509 N.W.2d at 271 (quoting *State v. Hammond*, 498 N.W.2d 126, 129 (N.D. 1993)).

In the present case, the evidence from the pretrial hearing demonstrates there are disputed material facts about Cox's arrest. The trial court recognized that those factual dis-

---

5. Similarly, in civil actions brought under 42 U.S.C. § 1983 for wrongful arrest, the legality of the police conduct underlying the claim is a question of law for the court to decide unless there is a material factual dispute about the circumstances surrounding the arrest, which then requires it be submitted to the jury. *Harper v. Harris County, Texas*, 21 F.3d 597, 602 (5th Cir.1994); *Presley v. City of Benbrook*, 4 F.3d 405, 410 (5th Cir.1993); *Warren v. Dwyer*, 906 F.2d 70, 75 (2nd Cir.1990).

6. For a discussion of our former law on resistance to unlawful official action and the position taken in the proposed Federal Criminal Code authorizing resistance only to "excessive force" see 1 Working Papers of The National Commission on Reform of Federal Criminal Laws, Comment on Justification and Excuse: Chapter 6, Sections 601–609 (Stein; April 10, 1968) pp. 261, 264 (Study Draft, 1970), and *State v. Ritter*, 472 N.W.2d 444 (N.D.1991). North Dakota's Criminal Code was largely derived from the proposed Federal Criminal Code. *See State v. Ennis*, 464 N.W.2d 378, 382 n. 4 (N.D.1990).

putes must be resolved by the jury, and it submitted the case to the jury to make a determination of Cox's guilt or innocence. One of the disputed issues was whether the evidence showed that Officer Nagel was acting lawfully when he arrested Cox for violating the "noise prohibited" ordinance.

Another question for the jury was whether Cox's response to any illegal conduct by Nagel was reasonable. Unlawful official conduct is not an absolute defense to a preventing-arrest charge. *Ritter* 472 N.W.2d at 452. Our law permits a defendant to resist only "excessive force" used to effect an arrest. *Id.* at 451–52. *See* NDCC § 12.1–05–03(1). The question of the reasonableness of the defendant's conduct in resisting an unlawful arrest is properly determined by the jury upon all of the facts. *Ritter,* 472 N.W.2d at 453. *See also* I Working Papers, *supra.*

The jury returned a verdict of guilt on the preventing-arrest charge, indicating it found either Nagel was acting lawfully at the time of the arrest or Nagel was acting unlawfully, but Cox's use of force to resist the arrest was unreasonable. In either case, the result is the same and was reached in accordance with our law on preventing arrest. *See Ritter,* 472 N.W.2d 444.

We conclude that the trial court did not err in denying Cox's pretrial motions and submitting the factual defense of unlawful police conduct to the jury.

Affirmed.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.

MESCHKE, Justice, concurring.

This is a developing subject. While I join in the majority opinion, I write to suggest there may be questions of fact for the jury, other than those outlined in this opinion. There may even be other questions of law for jury instructions on this subject. But no questions about the jury instructions were posed by this appeal. *See* NDCC § 29–06–15 (warrantless arrest permissible for a misdemeanor offense committed in officer's presence); *State v. Ackerman,* 499 N.W.2d 882, 885 (N.D.1993) (exigent circumstances must exist to support officer's warrantless entry into home to arrest for nonfelony offense). *Compare United States v. Santana,* 427 U.S. 38, 43, 96 S.Ct. 2406, 2410, 49 L.Ed.2d 300 (1976) ("[A] suspect may not defeat [a felony] arrest which has been set in motion in a public place ... by the expedient of escaping to a private place."); *Alto v. City of Chicago,* 863 F.Supp. 658 (N.D.Ill.1994) (applying *Santana* for a nonfelony warrantless arrest of suspect escaping to his home). *But see King v. City of Fort Wayne, Indiana,* 590 F.Supp. 414 (N.D.Ind.1984) (police may not pursue suspect into home for nonfelony arrest under *Santana,* even though begun in a public place).

Some might even suggest other relevant considerations. For example, *see Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (warrantless entry into home to effect routine felony arrest is presumptively unreasonable absent exigent circumstances); *Welsh v. Wisconsin,* 466 U.S. 740, 750, 104 S.Ct. 2091, 2098, 80 L.Ed.2d 732 (1984) (the nature of the offense is an important factor in determining whether exigent circumstances exist for warrantless entry into suspect's home to arrest).