UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

RENZO RIVERA; JUANA THERESA
JIMINEZ; MANUEL SALAZAR; AURORA
LEZAMA; MITCHELL RIVERA, by his
next best friend, Juana Theresa
Jiminez; BRAZO RIVERA, by his next
best friend, Juana Theresa Jiminez,
                    *Plaintiffs-Appellants,*

v.

DAMON WASHINGTON; HENRY THOMAS
TRUMBLE, III,                                           No. 01-1595
                    *Defendants-Appellees,*

and

JOHN RIZIK; LEONARDO GARCIA; FOUR
UNKNOWN ARLINGTON COUNTY,
VIRGINIA POLICE OFFICERS, aka John
Doe No. 1, John Doe No. 2, John
Doe No. 3, & John Doe No. 4;
ARLINGTON COUNTY, VIRGINIA,
                    *Defendants.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-00-776-A)

Argued: December 3, 2002

Decided: January 30, 2003

Before WILLIAMS and TRAXLER, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Roger Allen Eddleman, Falls Church, Virginia, for Appellants. Mary Ellen McGowan, SICILIANO, ELLIS, DYER & BOCCAROSSE, Fairfax, Virginia, for Appellees. **ON BRIEF:** Stephanie S. Ryan, SICILIANO, ELLIS, DYER & BOCCAROSSE, Fairfax, Virginia; Ara L. Tramblian, Deputy County Attorney, COUNTY ATTORNEY'S OFFICE OF THE COUNTY OF ARLINGTON, Arlington, Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

The appellants, Renzo Rivera (Renzo), Juana Theresa Jiminez (Jiminez), Manuel Salazar (Salazar), Aurora Lezama (Lezama), Mitchell Rivera (Mitchell), and Brazo Rivera (Brazo), appeal the district court's dismissal of their claims asserted under 42 U.S.C. § 1983 and Virginia law against two Arlington County, Virginia police officers, Damon Washington (Officer Washington) and Henry Thomas Trumble, III (Officer Trumble). We affirm.

I

A

Salazar, Jiminez, Mitchell, and Brazo resided at an apartment (the Rivera Apartment) located at 2038 Columbia Pike in Arlington, Virginia. Jiminez is the mother of Mitchell and Brazo, as well as the

mother of Renzo, who was married to Lezama and resided with Lezama elsewhere. Juan Rivera (Juan), another of Jiminez's sons, also resided at a different location with Jessica Zaubitz (Jessica), the mother of his child.

On the evening of May 10, 1998, the entire family went to a local restaurant to celebrate Mother's Day. Juan, Jessica, and their child were the first to leave the restaurant and were followed by other members of the family. After they arrived at the Rivera Apartment, Juan and Jessica argued in the parking lot behind the back door of the Rivera Apartment. Juan wanted to spend the night at the Rivera Apartment, but Jessica wanted to leave, so the argument went. After the argument became more heated, a resident of the apartment building called 911, and Officers Washington and Trumble were separately dispatched to investigate the domestic disturbance.

As Officer Washington approached the scene in his police cruiser, Juan and Jessica continued to argue in the parking lot. According to Lezama, you could hear their voices from inside the Rivera Apartment, but "not clearly." (J.A. 413). According to Mitchell, Juan was "[i]ntoxicated," at the time, but not "[d]runk to a point where he [could not] walk." (J.A. 156).

As he exited his police cruiser, Officer Washington saw that Jessica had gotten into a white vehicle parked near the back door of the Rivera Apartment. Officer Washington approached the group, asking what was going on. Renzo told Officer Washington that it was a "'family matter' and that there was no problem." (J.A. 389). Officer Washington advised Renzo that he needed to interview the involved parties himself to determine what had happened and ordered Renzo to get out of his way. Officer Washington also ordered Juan to stand by while he interviewed Jessica.

Jessica advised Officer Washington that she and Juan had an argument, denied that Juan had physically assaulted her, but admitted that he had assaulted her in the past. Jessica also advised Officer Washington that Juan was the father of her child, that she was afraid and wanted to leave, but could not because Juan had her car keys. Officer Washington told Jessica that he would get her car keys for her and talk to Juan about the situation. While Officer Washington was talk-

ing to Jessica, Juan disobeyed Officer Washington's order to stand by and entered the Rivera Apartment through the back door.

Meanwhile, Officer Trumble arrived on the scene. Unlike Officer Washington, Officer Trumble arrived in the parking lot in front of the front door of the Rivera Apartment. Officer Trumble knocked on the front door of the Rivera Apartment and was admitted with no protest by Mitchell. Officer Trumble asked where the other officer was and was directed through the Rivera Apartment and out the back door to the parking lot where Officer Washington was interviewing Jessica.

After Officer Washington finished interviewing Jessica, he and Officer Trumble approached the back door of the Rivera Apartment, which was open. Officer Washington then repeatedly asked Juan to leave the Rivera Apartment so that he could speak with him. After Juan refused to comply with Officer Washington's oral requests to leave the Rivera Apartment, Officer Washington entered the Rivera Apartment and grabbed Juan, who was seated on the couch, by the arm and began to pull him out of the Rivera Apartment. At this point, Juan resisted Officer Washington's efforts to get him out of the Rivera Apartment. While Juan was being pulled out of the Rivera Apartment, Salazar, "with [his] hand," "separated both of them." (S.J.A. 220). At this point, Officer Washington pushed Salazar and Salazar pushed back. Salazar then moved into a position to block Officer Trumble's entry and, in fact, placed his hand on Officer Trumble's wrist as Officer Trumble entered the Rivera Apartment. At this point, according to Salazar, "all the trouble started." (S.J.A. 225).

Officer Trumble entered the Rivera Apartment, notwithstanding Salazar's attempt to block his entry. Renzo then "attempted to intervene in and stop the assault." (J.A. 390). A struggle ensued between Renzo and the officers, and Renzo was struck in the head and beaten, slammed against the wall, and had a gun pointed at his head. After Renzo was slammed against the wall and continued to resist Officer Washington's efforts to subdue him, Jiminez, who was protesting the officers' actions, was struck with a flashlight, arguably several times, by Officer Trumble. Jiminez was also thrown on a table by Officer Trumble.

In an attempt to defend Jiminez, Mitchell tried to stop Officer Trumble from hitting Jiminez. In response, Officer Trumble grabbed Mitchell by the neck, pushed him back, and told him to back off. Additional officers then arrived on the scene and the melee ended shortly thereafter.[1]

Renzo, Jiminez, Salazar, and Lezama were arrested and charged with numerous offenses under Virginia law. Specifically, Renzo was charged with impeding a police officer in the discharge of his duties and attempted murder of a police officer. Jiminez and Salazar both were charged with impeding a police officer in the discharge of his duties and assault and battery of a police officer. Lezama was charged with assault and battery of a police officer. In July 1998, the charges against Jiminez were dismissed. In January 1999, the charges against Renzo, Salazar, and Lezama were dismissed.

B

On May 9, 2000, the appellants filed this action against Arlington County, Virginia and four Arlington County police officers, including Officers Washington and Trumble, in the United States District Court for the Eastern District of Virginia.[2] The appellants asserted claims under 42 U.S.C. § 1983 for unlawful entry (Count VII), unlawful arrest (Count VIII), excessive force (Count IX), perjury and conceal-ment of exculpatory evidence (Count X), and conspiracy (Count XI). The appellants also asserted claims under Virginia law for assault and battery (Count I), false arrest (Count II), malicious prosecution (Count III), abuse of process (Count IV), intentional infliction of emotional distress (Count V), and civil conspiracy (Count VI).

On March 16, 2001, Officers Washington and Trumble filed a motion for summary judgment, alleging, *inter alia*, that they were entitled to qualified immunity on the appellants' § 1983 claims. On March 30, 2001, the district court granted the motion for summary

---

[1]According to Brazo, during the melee, Lezama hit one of the officers in the back with a telephone.

[2]Two police officers (John Rizik and Leonardo Garcia) and Arlington County were later dismissed from the action and are not parties to this appeal.

judgment, dismissing the appellants' federal claims (Counts VII-XI) with prejudice and the appellants' Virginia state law claims (Counts I-VI) without prejudice. The appellants noted a timely appeal.

II

The appellants argue that the district court erred when it concluded that Officers Washington and Trumble were entitled to qualified immunity on their § 1983 unlawful entry claim. This argument is without merit.

Entitlement to qualified immunity must be analyzed in two steps, which are to be "considered in proper sequence." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). As a "threshold question," a court must ask whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right." *Id.* at 201. If the answer is no, then the analysis ends; the plaintiff cannot prevail. *Id.* If the answer is yes, then "the next, sequential step is to ask whether the right was clearly established" at the time of the events at issue. *Id.* This determination must be made "in light of the specific context of the case, not as a broad general proposition." *Id.* If the right was not "clearly established" in the "specific context of the case"—that is, if it was not "clear to a reasonable officer" that the conduct in which he allegedly engaged "was unlawful in the situation he confronted"—then the law affords immunity from suit. *Id.* at 201-02. Accordingly, the answer to both *Saucier* questions must be in the affirmative in order for a plaintiff to defeat a defendant police officer's motion for summary judgment on qualified immunity grounds.

As to the first *Saucier* question, the facts alleged do not demonstrate that the officers violated the appellants' constitutional right against an unlawful entry because courts have recognized that a person cannot avoid a *Terry* stop simply by retreating into a home.[3] For example, in *Harbin v. City of Alexandria*, 712 F. Supp. 67 (E.D. Va.

---

[3]We need not decide if Lezama, as a non-resident of the Rivera Apartment, has standing to contest the constitutional validity of the officers' entry into the Rivera apartment because, as discussed *infra*, the officers' entry into the Rivera apartment was constitutionally permissible.

1989), *aff'd*, 908 F.2d 967 (4th Cir. 1990), the court upheld the stop of the plaintiff in his home after the police followed the plaintiff on the street and called to him to stop as he crossed the threshold of his house and entered his living room. *Id.* at 71. The court relied upon the Supreme Court's decision in *United States v. Santana*, 427 U.S. 38 (1976), which recognized that a criminal suspect cannot thwart an otherwise valid arrest by retreating from the doorway of her home into the vestibule of the house, noting that this principle had been sensibly extended to *Terry* stops. *Harbin*, 712 F. Supp. at 71-72; *cf. United States v. Pace*, 898 F.2d 1218, 1228-29 (7th Cir. 1990) (holding that, once police officers had reasonable suspicion to stop defendant, defendant could not avoid *Terry* stop by entering his condominium's garage and attempting to close the garage door); *Alto v. City of Chicago*, 863 F. Supp. 658, 661-62 (N.D. Ill. 1994) ("[A]n officer who stops a person because of a reasonable, articulable suspicion of criminal activity . . . need not terminate the stop merely because the suspect flees to his home."); *United States v. Gomez*, 495 F. Supp. 992, 1005 (S.D.N.Y. 1979) (holding that agents who continued attempted *Terry* stop of suspects after they retreated and slammed the door of apartment did not contravene the Fourth Amendment, as a valid *Terry* stop occurred within), *aff'd*, 633 F.2d 999 (2d Cir. 1980).

In this case, the appellants do not dispute, nor could they, that Officer Washington was entitled to conduct a *Terry* stop of Juan once he arrived at the scene of the Juan/Jessica domestic dispute. Officer Washington approached Jessica first, but before he had a chance to question Juan, Juan entered the Rivera apartment. Under these circumstances, Officer Washington, as well as Officer Trumble, was entitled to enter the Rivera apartment to conduct the *Terry* stop inside the Rivera apartment.

In sum, the district court properly dismissed the appellants' unlawful entry claim.

## III

Salazar, Mitchell, Jiminez, and Renzo contend that the district court erred when it concluded that Officers Washington and Trumble

were entitled to qualified immunity on their § 1983 excessive force claim. This argument has no merit.

Excessive force claims are analyzed under the Fourth Amendment's objective reasonableness standard. In evaluating excessive force claims, the reasonableness of the officer's belief as to the appropriate level of force should be judged from an on-scene perspective. *Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002). The objective reasonableness test requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* This court must make allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir.), *cert. denied*, 122 S. Ct. 342 (2001).

As to the first *Saucier* question, the facts alleged do not demonstrate that the officers violated Salazar, Mitchell, Jiminez, and Renzo's constitutional right against the use of excessive force. The officers were confronted with a highly volatile domestic disturbance. Jessica wanted her car keys returned and Juan, who was under the influence of alcohol, was refusing to cooperate with Officer Washington's efforts to conduct his *Terry* questioning. Officer Washington entered the Rivera apartment, grabbed Juan, and began to pull him out of the Rivera apartment. This action was constitutionally protected because it was reasonable for Officer Washington to conduct his *Terry* questioning of Juan away from the Rivera apartment and outside the presence of numerous family members, and the mild and tempered force used against Juan was reasonable because Juan was refusing to cooperate.

In response to Officer Washington's actions, Juan resisted, and Salazar attempted to separate Officer Washington and Juan. Officer Washington's push of Salazar was reasonable under the circumstances because Salazar was interfering with Officer Washington's attempt to question Juan. Salazar attempted to block Officer Trumble's entry by moving in front of the doorway and then placed his

hand on Officer Trumble's wrist as Officer Trumble entered the Rivera apartment. At this point, Renzo intervened and a struggle between Renzo and the officers ensued. The officers' actions concerning Renzo were reasonable because unquestionably the officers were entitled to defend themselves once Renzo decided to intervene.

Thereafter, Jiminez was struck with a flashlight, arguably several times, by Officer Trumble. Additionally, she was thrown on a table by Officer Trumble. While the excessive force claim of Jiminez is perhaps stronger than the rest, there is no question that Jiminez was protesting the officers' actions at the time she was struck, the melee was already underway, and the officers were confronted with a volatile domestic disturbance involving numerous participants in a small confined area. Under these circumstances, we find Officer Trumble's actions were reasonable.

Finally, Officer Trumble's modest and tempered treatment of Mitchell was reasonable because Mitchell was attempting to physically intervene in the melee which was well underway.

In sum, the district court properly dismissed Salazar, Mitchell, Jiminez, and Renzo's excessive force claim.

IV

For the reasons stated herein, the judgment of the district court is affirmed.[4]

*AFFIRMED*

---

[4]We have reviewed the argument of Lezama, Jiminez, Salazar, and Renzo concerning the district court's dismissal of their unlawful arrest claim and find it to be without merit. We also decline to address the appellants' arguments concerning the merits of their state law claims because the district court did not abuse its discretion in declining to exercise jurisdiction over the state law claims once it dismissed the federal claims. *Jordahl v. Democratic Party of Virginia*, 122 F.3d 192, 203 (4th Cir. 1997).