Ann G. LIEBELT, Appellee and Cross-Appellant,

v.

Clifford L. SABY, Individually and as Personal Representative of the Estate of Lena Saby, Appellant and Cross-Appellee.

Civ. No. 9575.

Supreme Court of North Dakota.

May 22, 1979.

Freed, Dynes, Malloy & Reichert, P. C., Dickinson, for appellant and cross-appellee; argued by George T. Dynes, Dickinson.

Maurice R. Hunke, Dickinson, for appellee and cross-appellant.

PAULSON, Justice.

This is a partial appeal from the judgment of the district court of Dunn County by Clifford L. Saby, individually, and as Personal Representative of the Estate of Lena Saby ["Clifford"]. There is also a partial cross-appeal from this judgment by Ann G. Saby Liebelt ["Ann"]. In addition there is a motion by Ann to dismiss Clifford's appeal as well as a motion to dismiss Ann's appeal. We affirm.

Lewis B. Saby, also known as L. B. Saby, and Lena Saby, also known as Lena H. Saby, were husband and wife and were the natural parents of their two children, Clifford and Ann, as well as the foster parents of Joyce Saby Kukla. Lewis B. Saby transferred all of his real and personal property to his wife Lena Saby, prior to his death in April of 1969. It was therefore not necessary to probate his estate.

Lena Saby re-acquired the ownership of a liquor establishment in the city of Killdeer in 1957 and continued to operate the business until August 1970. It was necessary for Lena Saby then to cease operating the bar business because of ill health.

Clifford was appointed Guardian of the person and the estate of Lena Saby on August 25, 1970, because of Lena Saby's ill health. Lena died on May 14, 1976, and Clifford was appointed Personal Representative of her estate by the Dunn County probate court in November of 1976. The petition for the appointment of Clifford as Guardian, as well as the petition for his appointment as Personal Representative of their mother's estate, was signed by Ann. Joyce Saby Kukla, the Sabys' foster child, was never formally adopted by them, nor is she a legal heir of either of them. She is not and never has been a party in this particular case.

When the guardianship was first commenced, Lena Saby was the owner of certain real and personal property in her individual name, as well as the owner of personal property in the joint names of Lena Saby or Clifford Saby. The property owned by Lena Saby individually at the commencement of the guardianship, was valued at $29,463.54; and the joint personal property at that same time was valued at $59,244.86.[1]

Clifford, as Guardian, expended the moneys pursuant to directives by the county judge from Lena Saby's individual accounts during the existence of the guardianship for the care of his mother. Thus, by the time of the filing of the Sixth Annual Report and Account, which occurred approximately three months before Lena Saby's death, the individual accounts had been exhausted. During that same period of time, the joint accounts, from which no moneys had been expended, increased in value from $59,-244.86 to $82,755.02.[2] The Final Report and Account in the guardianship and an Order Allowing the Final Report and Account and Final Discharge were entered, both of which were dated August 26, 1976.

After Lena Saby's death, Ann became aware of the fact that Clifford was claiming all of the remaining assets in the estate of their mother, because Clifford stated in a letter to Ann and Ben Liebelt[3] dated July 4, 1976, that the assets were in joint tenancy with the right of survivorship and, therefore, that there would be no other assets remaining in the estate for distribution. Ann then instituted an action against both the guardianship and the estate, in which action she asserted that she was entitled to her share in the remaining assets, primarily because of Clifford's conflict-of-interest status in his capacity both as a Guardian-beneficiary and as a Personal Representative-beneficiary; and that he violated his fiduciary obligation (1) by maintaining guardianship assets in joint tenancy with his ward, Lena Saby, and himself; and (2) by first exhausting Lena Saby's singly owned assets and by increasing the jointly owned assets (which would inure to his benefit).

The probate judge of Dunn County was disqualified and Burleigh County Judge Dennis A. Schneider presided at the hearings. Subsequent to the hearings, Judge Schneider held that the remaining joint assets in the guardianship and in the estate were not joint tenancy assets and that the assets should be equally divided between Ann and Clifford.

Clifford later submitted his Final Report and Account in the estate and appealed to the district court from the order approving the Final Report and Accounting and Petition for Distribution by the probate court of Dunn County dated September 27, 1977.[4]

 We shall first consider the issue raised by Ann's motion to dismiss Clifford's appeal or, in the alternative, to remand the same to the district court for further pro-

---

1. Guardianship Inventory and First Annual Report and Account.

2. Guardianship Inventory and First Annual Report and Account and Guardianship Sixth Annual Report and Account.

3. Ben Liebelt was the husband of Ann.

4. The district court affirmed the probate court.

ccedings. Ann urges in support of her motion to dismiss that, pursuant to §§ 28–27–02 and 30–26–01 of the North Dakota Century Code, this court does not have jurisdiction of the appeal; that the jurisdiction is premature; and that the order and judgment entered by the district court of Dunn County does not affect the substantial rights of Clifford in his capacity as Personal Representative of Lena Saby's estate. Section 28–27–02, N.D.C.C., sets forth the orders which are appealable to the Supreme Court. Section 30–26–01, N.D.C.C., provides for appeal from a proceeding in county court to the district court. In support thereof, Ann cites *In re Estate of Brudevig*, 175 N.W.2d 574 (N.D.1970); and *In re Johnson's Guardianship*, 87 N.W.2d 50 (N.D. 1957). *See also In re Fettig's Estate*, 129 N.W.2d 823 (N.D.1964); and *In re Glavkee's Estate*, 75 N.D. 118, 25 N.W.2d 925 (1947). A perusal of each of these cases reveals that they are distinguishable on their respective facts. It has been the general rule of this court to decide each case on its merits and not to dismiss on appeal on a technical ground or, in the alternative, to remand it for further proceedings to the district court or even to the probate court. To the extent that *In re Brudevig, supra*, is inconsistent herewith, it is hereby overruled. We determine that the motion to dismiss Clifford's appeal or, in the alternative, to remand the appeal to the district court for further proceedings be denied.

We are next confronted with the following issues:

(1) Are Ann's petitions barred by her failure to appeal from the guardianship orders, the order allowing the Final Report and Account and Final Discharge of the Guardian, thus preventing her from having re-tried matters considered and acted upon at the time the county court approved the Final Report and Account of the Guardian and the Order for Discharge?

(2) Did the district court err in determining that the savings account in the Bank of Killdeer and funds traceable therefrom was singly owned property of Lena Saby and was part of her estate after her death?

(3) Did the district court err in requiring Clifford to pay for attorneys fees subsequent to the June 9, 1977, hearing in the county court from his personal funds and not from the assets of Lena Saby's estate?

(4) Did the district court err in requiring Clifford to pay one-half of the cost of the transcript in county court and in refusing to grant Clifford's costs and disbursements in this action in district court against his sister Ann?

Clifford asserts that Ann's petition to vacate and set aside the Order Allowing the Final Report and Account and Final Discharge of the Guardian should be dismissed because Ann did not appeal from the Order Approving the Final Report and Account, as well as the Order for Final Discharge of the Guardian within the time for appeal prescribed by § 30–26–03, N.D.C.C.

Clifford buttresses his contention by citing § 30–10–05, N.D.C.C. This section of the code was not in effect at the time of the conclusion of the guardianship proceedings. However, the 1973 Legislature of this State enacted the Uniform Probate Code, which repealed Chapter 30–10 (which includes § 30–10–05), and the new probate code became effective on July 1, 1975. The guardianship for Lena terminated with her death in May 1976. The guardianship would thus be subject to the Uniform Probate Code from and after the effective date, that is, July 1, 1975, until the guardianship was terminated by a final discharge on August 26, 1976. Therefore, § 30–10–05, N.D.C.C., would not be controlling. Section 30.1–03–01 provides for the giving of notice and § 30.1–03–02 provides for waiver of notice. In the instant case, neither party has urged that a waiver of notice was executed by Ann either under the notice statutes in existence prior to July 1, 1975, or subsequent to the effective date of the Uniform Probate Code. Clifford's contention, therefore, is not persuasive.

Clifford further urges that since Ann did not appeal within the period prescribed by

§ 30–26–03, N.D.C.C., the statute on appeals from probate court, Ann is barred from any further action against the guardianship.

A review of the record reveals that while Ann was the petitioner for the appointment of Clifford as Guardian, at no time did she receive any notice of the hearings in the guardianship, which included six annual reports and accounts, the final report and account, and the final discharge of Clifford as Guardian.[5] Furthermore, Ann has commenced her actions against the guardianship and the estate within a reasonable time after she learned that her brother, Clifford, claimed all of the remaining assets in the guardianship and in the estate.

Ann counters by urging that it is unnecessary to pursue legal proceedings in the guardianship because the Guardian's disbursements of guardianship funds may be challenged in the estate proceedings and, further, that the final distribution in the guardianship provides that "The proceeds of a guardianship shall be distributed to Clifford as personal representative of Lena's estate." Ann cites *Dowdy v. Jordan*, 128 Ga.App. 200, 196 S.E.2d 160 (1973), in support of her position.

In *Dowdy, supra* the ward was a fulltime patient at a nursing home and, to facilitate the cashing of her savings accounts in order to pay the bills which accrued, the savings accounts were placed in joint tenancy with right of survivorship. Six months later, Jordan, who was the joint tenant, was appointed guardian. The inventory which was filed included the total value of the savings accounts rather than the one-half value (under joint tenancy with right of survivorship). The guardian filed annual accounts for the years 1964 and 1965, but none were filed after that time. The executor of the deceased ward's estate filed objections to the discharge of the guardian, wherein the executor requested the delivery of the full amount of the two savings accounts because of the conflicting interests of the guardian in his dual status as a guardian-joint tenant. The Georgia Court of Appeals held that the guardian-joint tenant status created a conflict of interest, the executor prevailed, and the estate acquired the possession of the two savings accounts.

In the instant case, Ann was the petitioner in both the guardianship and probate proceedings, but at no time did she receive any official notice of the hearings on the annual accounts and on the final annual account and discharge in the guardianship proceedings; and she received no notice of the hearings in the partially completed proceedings in the probate of Lena's estate.

■■■ This court, in *Sturdevant v. SAE Warehouse, Inc.*, 270 N.W.2d 794 (N.D. 1978), held that where the testator's brother was not made a party and served with notice of probate proceedings and was not in privity with parties of such proceedings, the final decree of distribution of the county court was not res judicata and thus the testator's brother was not estopped from commencing a collateral action in district court against the executors and trustees of the Virgil Sturdevant estate. We adopt the rationale of *Sturdevant, supra*, and conclude that Ann is entitled to have her actions in the guardianship and the estate heard and determined. Clifford's motion to dismiss Ann's cross-appeal is denied.

We are next confronted with the issue of whether or not Clifford is entitled to receive the "Series E" U.S. Savings Bonds, the certificates of deposit in the First National Bank of Dickinson, and the savings account in the Bank of Killdeer, as well as the funds traceable therefrom.[6]

Ann strenuously contends that *Dowdy, supra*, is controlling and that Ann is accordingly entitled to receive one-half of the "Series E" U.S. Savings Bonds, one-half of

---

5. Ann received a copy of the Guardianship Inventory and Appraisement.

6. The savings bonds, the certificates of deposit, and the savings account were all investments made by Lena, which were made prior to the commencement of any guardianship proceed-

ings. Any transactions between Lena and Clifford were made prior to the guardianship proceedings, including the $10,000 withdrawal by Clifford from the savings account, which amount was repaid by Clifford to the savings account after he qualified as Guardian.

the certificates of deposit in the First National Bank of Dickinson, and one-half of the savings account in the Bank of Killdeer, as well as the funds traceable therefrom, together with any resulting increases in their value. Clifford vigorously asserts that *Dowdy, supra,* is not applicable because the State of Georgia does not have a statute similar to North Dakota's § 30.1–31–04, N.D.C.C., which creates a statutory presumption that the surviving party of jointly held properties is the sole owner. He further contends that, in *Dowdy,* there was no indication that the guardian-joint tenant followed any court instructions; that the accounts in *Dowdy* had recently been held in the name of the ward; that the ward in *Dowdy* was in her middle eighties, and a fulltime patient in a nursing home, whereas, in the instant case, Clifford asserts that Lena was in her middle sixties, vigorous, and operating her own business when the accounts were initiated as joint accounts by Lena. In *Dowdy,* the money was necessary to pay the ward's living expenses, whereas Lena treated the Killdeer account solely as a savings account. In *Dowdy,* the joint tenancy was created for convenience, whereas, in the instant case, the account was created for the benefit of Clifford and the transaction contained all of the elements of a gift *inter vivos.* In *Dowdy,* the undue influence was present, but was not in Saby. In *Dowdy,* there was an executed will omitting Jordan, the joint tenant, as an heir while in *Saby* Lena died intestate; Jordan was secretive concerning his activities as a guardian by failing to file reports, whereas in *Saby,* timely reports were filed. Furthermore, in *Dowdy,* Jordan, the guardian, treated the savings accounts as separate property while in the instant case the savings account, bonds, and certificates of deposit were all treated as joint tenancy property.

■■ Whether or not personal property is held in joint tenancy with the right of survivorship depends on the intentions of the parties and is determined in light of all of the circumstances. It is also a general rule that the interpretation of a contract is a question of law. *Stetson v. Blue Cross,* 261 N.W.2d 894 (N.D.1978); and *Johnson v. Auran,* 214 N.W.2d 641 (N.D.1974).

■ In the instant case, we are to determine whether or not the "Series E" U.S. Savings Bonds, the certificates of deposit in the First National Bank of Dickinson, and the savings account in the Bank of Killdeer are in joint tenancy with right of survivorship.

We shall first consider the status of the U.S. Savings Bonds. Ann asserts that the principle enunciated in *Dowdy, supra,* should be adopted by this court and, accordingly, that the proceeds from the bonds should be divided equally between Ann and Clifford, especially because the bonds had been cashed during the existence of the guardianship. Ann concedes that if the bonds had not been cashed, Clifford would have been entitled to the bonds as the surviving joint tenant.

The savings bonds, prior to their being cashed in order to invest the proceeds in a more lucrative investment, were in the names of Lena Saby and Clifford Saby. Numerous decisions, both in the federal courts and in many state courts, have held that the insertion of two names on a savings bond creates a joint tenancy with right of survivorship. This court has adopted the general rule in *In re Kaspari's Estate,* 71 N.W.2d 558 (N.D.1955). We have also considered whether the cashing of the bonds and investing of the proceeds in other investments would affect their joint tenancy status. A review of the record reveals that Clifford is able to trace the proceeds received from cashing the bonds; therefore, he is entitled to the moneys as a surviving joint tenant. We hold that the district judge did not commit error in determining that the moneys derived from the sale of the savings bonds is Clifford's sole property.

We will next consider to whom the proceeds of the certificates of deposit in the First National Bank of Dickinson are payable. Ann and Clifford, respectively, have used the same arguments on this issue as they did with reference to the savings bonds.

A further review of the record and the applicable law reveals that Clifford is entitled to the moneys derived from the certificates of deposit, and that the district judge did not err in awarding the proceeds to Clifford.

Having determined that Clifford is to receive the moneys, or investment, derived from the disposition of the savings bonds and the certificates of deposit, we are confronted with the issue of whether or not Clifford is entitled to the savings account in the Bank of Killdeer.

Clifford asserts that the district court erred in holding that the savings account in the Killdeer Bank was Lena's sole property and that the savings account is a part of her estate and shall be divided equally between Clifford and Ann.

Clifford states that Paragraph VIII of the Findings of Fact is clearly erroneous because the court found that while the savings account was held in the names of Lena Saby and/or Clifford Saby, that such account was actually individually owned by Lena and should have been considered as such by the Guardian. Clifford further asserts that the savings account was a gift *inter vivos* to him and that accordingly he is the sole owner.

Ann controverts Clifford's contentions in urging that Finding of Fact Number VIII of the trial court is not clearly erroneous, that the elements for a gift *inter vivos* are not present; and, thus, the savings account is an asset of Lena's estate.

The Supreme Court of this State has held that an interpretation of a contract is a matter of law. *Stetson v. Blue Cross, supra,* and *Johnson v. Auran, supra.*

■ The question of whether a finding of fact by the trial court is a finding of fact or a conclusion of law depends upon the facts in each case. For a scholarly discussion of the distinction between a finding of fact and a conclusion of law, we refer you to *Slope County, et al. v. Consolidation Coal Company,* 277 N.W.2d 124 (N.D.1979).

In the instant case, we conclude that Paragraph VIII of the Findings of Fact is a conclusion of law and is reviewable as such.

This Court in *In re Brezel's Estate,* 101 N.W.2d 557 (N.D.1960), considered the effect of § 6–03–66, North Dakota Century Code, which was repealed by the enactment of the Uniform Probate Code, which became effective July 1, 1975. The court in *Brezel, supra,* also considered the following statement which was contained in the caption at the top of the bank ledger sheet; " 'This order will not be paid unless accompanied by savings pass book' ". In addition, the holders of the account were designated as follows:

Mr. and/or Mrs. George Brezel
118 First Avenue West
Dickinson, N.D. 58601

■ In the case at bar, we have in evidence the savings passbook of Lena's savings account in the Bank of Killdeer, which states in the caption thereof: "In account with Lena Saby and/or Clifford Saby . . No payments can be made or money withdrawn without presentation of this book".

A review of the record reveals that Lena had possession of the passbook during most of the time that the savings account was in existence; that Lena alone opened the account; that she made all of the deposits therein; and that such deposits were made by her as the owner.

This court, in *In re Brezel, supra,* further held that § 6–03–66, N.D.C.C., was not applicable because such section was enacted for the protection of the bank; that the entry of the names of those authorized to draw on the account is not conclusive as to the ownership of the account; and that the use of the words "and/or" is not sufficient to establish a gift *inter vivos* of the deposit or of any interest therein. Clifford has also cited §§ 30.1–31–01 and 30.1–31–04, N.D.C.C., to further support his position. We apply the same reasoning in the instant case to the status of ownership of the Lena Saby savings account, as to the Lena Saby and/or Clifford Saby's names, as was applied by the court in its interpretation of § 6–03–66, N.D.C.C., in the *Brezel* case.

We adhere to the holding in *Brezel* ; therefore, we hold that the district judge did not commit error in holding that the

888

savings account in the Bank of Killdeer was solely the property of Lena Saby.

■ We will now consider the third issue which involves the question of whether or not the district court erred in requiring Clifford to pay $960.59 in attorneys' fees from his personal funds rather than from the assets of Lena's estate. Clifford contends that § 30.1–18–20, N.D.C.C., permits him to be reimbursed for attorneys' fees expended in proceedings involving Lena's estate.

Section 30.1–18–20, N.D.C.C., requires that the personal representative defend or prosecute the action in good faith. The Editorial Board Comment to the statute states that:

"Litigation prosecuted by a personal representative for the primary purpose of enhancing his prospects for compensation would not be in good faith."

Although the district court did not find that Clifford had acted in bad faith, the court did not commit error in denying Clifford's request that $960.59 in attorneys' fees be paid by Lena's estate.

We hold that the district court did not err in denying Clifford's request that Lena's estate pay $960.59 in attorneys' fees for legal services rendered subsequent to the county court hearing on June 9, 1977.

■ The final issue involves the district court's refusal to grant costs and disbursements to Clifford and its order requiring Clifford to pay one-half of the cost of the county court transcript. Clifford contends that he, or Lena's estate, was entitled to costs because he was the prevailing party in the district court. He further contends that he should not be required to pay one-half the cost of the county court transcript because the transcript had been requested by Ann, not by him, and the transcript was not required to be transmitted to the district court because the district court trial was de novo.

Section 28–26–06, N.D.C.C., provides that the clerk "must tax" certain disbursements in favor of the "prevailing party". Because Clifford and Ann each prevailed on certain respective issues in the district court, there was no single "prevailing party" against whom the clerk could tax disbursements. In addition, § 28–26–10, N.D.C.C., provides for the awarding of costs for or against either party. The awarding of costs under § 28–26–10 is discretionary. We conclude that the court did not err in refusing to tax disbursements in favor of Clifford pursuant to § 28–26–06, N.D.C.C. We further conclude that the district court did not abuse its discretion in refusing to award costs pursuant to § 28–26–10, N.D.C.C.

■ Regarding the transcript cost issue, Ann requested the county court transcript which was used in the trial de novo in district court. Clifford's attorney and Ann's attorney stipulated that the transcript would be introduced as evidence in the district court trial. Clifford, therefore, agreed to use the transcript and benefited from it. We conclude that the district court did not commit error by requiring that Clifford pay one-half of the transcript's costs.

We hold that the district court did not err or abuse its discretion in refusing to award costs and disbursements to Clifford. We further hold that the district court did not err in ordering Clifford to pay one-half of the cost of the county court transcript.

Ann's motion to dismiss the appeal is denied, Clifford's motion to dismiss Ann's cross-appeal is denied, and the judgment of the district court is affirmed.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.