STATE of North Dakota, Plaintiff
and Appellee,

v.

Michael O. DuPAUL, Defendant
and Appellant.

CITY OF MINOT, Plaintiff and Appellee,

v.

Michael O. DuPAUL, Defendant
and Appellant.

Cr. Nos. 940137, 940138.

Supreme Court of North Dakota.

Feb. 8, 1995.

John P. Van Grinsven, III (argued), Asst. State's Atty., Minot, for plaintiff and appellee.

Michael O. DuPaul (argued), pro se, Minot, for defendant and appellant.

MESCHKE, Justice.

Michael O. DuPaul appeals from the denial of his motions for appointment of counsel for this appeal and for an extension of time to appeal his jury convictions. We affirm both denials and dismiss DuPaul's untimely appeals from the jury convictions.

This is another episode in DuPaul's quixotic quest for his personalized conception of justice. In 1991, DuPaul was arrested for drunk driving and preventing official duties, and his driver's license was revoked. Du-

Paul appealed the revocation, and · we affirmed. *North Dakota Dep't of Transp. v. DuPaul*, 487 N.W.2d 593 (N.D.1992). The trial court dismissed the misdemeanor charges before trial, and the prosecution appealed. We reversed and remanded for trial. *State v. DuPaul*, 509 N.W.2d 266 (N.D.1993). A jury found DuPaul guilty of both charges. On April 29, 1994, DuPaul was given a suspended sentence.

DuPaul mailed a notice of appeal on May 9 that was received and filed by the clerk on May 10, one day past the ten days to file an appeal. NDRAppP 4(b)(1). Notified that his appeal was untimely, DuPaul moved on May 31 for an extension of time to file the appeal for reasons of excusable neglect. NDRAppP 4(b)(3). On June 8, the trial court denied any extension.

DuPaul insists that he has been "denied counsel at all stages" throughout this case, and that he has been the victim of "numerous civil rights violations." On June 13, 1994, DuPaul filed his latest request for court-appointed counsel. That motion was quickly denied by the trial court. DuPaul timely appealed both the June 8 order denying an extension for appeal and the June 13 order denying court-appointed counsel for this appeal.

DuPaul argues that the trial court abused its discretion in denying his motions. Specifically, he urges under NDRAppP 4(b)(3) that his neglect in late filing the appeal should be excused. DuPaul also claims indigency and that, under NDRCrimP 44, he should have counsel appointed at public expense for this appeal.

■ DuPaul urges that the denial of appointed counsel for the criminal trial and appeal was "an acceptable and genuine excuse (reason) for missing a particular court procedure date," and he vaguely alleges that "[e]xcusable neglect is presented specifically and overall LACK of Due Process herein."

These generalized allegations do little unless DuPaul was in fact entitled to appointment of counsel at some earlier stage. Therefore, we first consider DuPaul's appeal of the denial of court-appointed counsel for his appeal of the order denying an extension of time to appeal his jury convictions, since that claim is joined with his claim of excusable neglect. As *Ennis v. Dasovick*, 506 N.W.2d 386, 393 (N.D. 1993), explains, our standard for review of denial of appointment of counsel is whether the trial court acted arbitrarily, unconscionably, or unreasonably in doing so.

■ The right to counsel in a criminal case is the subject of the Sixth Amendment of the United States Constitution:

> In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.

This "provision of the Bill of Rights . . . is 'fundamental and essential to a fair trial' [and] is made obligatory upon the States by the Fourteenth Amendment." *Gideon v. Wainwright*, 372 U.S. 335, 342, 83 S.Ct. 792, 795, 9 L.Ed.2d 799 (1963). And "a State may not grant appellate review in such a way as to discriminate against some convicted defendants on account of their poverty." *Douglas v. California*, 372 U.S. 353, 355, 83 S.Ct. 814, 815, 9 L.Ed.2d 811 (1963), citing *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).[1] What's more, the North Dakota Constitution directs:

> In criminal prosecutions in any court whatever, the party accused shall have the right . . . to appear and defend in person and with counsel. . . .

Art. I, § 12. "We have traditionally recognized that the right to counsel under our Constitution is fundamental because it enables an accused to procure a fair trial." *State v. Orr*, 375 N.W.2d 171, 177–78 (N.D. 1985). Still, the right to appointed counsel in a criminal case is neither as absolute, as

---

1. In another context, the United States Supreme Court described the effect of *Douglas*, stating that, "the Court dealt only with defendants who could not pay for counsel from their own resources and who had no other way of gaining representation. *Douglas* provides no relief for those on whom the burdens of paying for a criminal defense are, relatively speaking, great but not insurmountable. Nor does it deal with relative differences in the quality of counsel acquired by the less wealthy." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 21, 93 S.Ct. 1278, 1290, 36 L.Ed.2d 16 (1973). This describes DuPaul's situation.

"free," nor as comprehensive as DuPaul would like it.

█ There is no legal reason to appoint counsel for someone who can afford and obtain his own. The limited right to appointed counsel is largely implemented in North Dakota by NDRCrimP 44: "Absent a knowing and intelligent waiver, every *indigent* defendant is entitled to have counsel appointed at public expense to represent the defendant at every stage of the proceedings from initial appearance ... through appeal in the courts of this state in all felony cases," and further "in all non-felony cases unless the magistrate has determined that sentence upon conviction will not include imprisonment." (Our emphasis). The Explanatory Note to NDRCrimP 44 explains some of the factors in appointment of counsel at public expense for an accused indigent:

> Rule 44 is a modification of Rule 44, FRCrimP, governing the appointment of counsel, and implements the holding of the U.S. Supreme Court in *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). This Rule would allow appointment of counsel only when so required under the holding of Argersinger, whereas the present Federal Rule requires appointment of counsel for all indigent defendants. It is not the intent of this Rule to impose upon counties the expenses of the defense of indigents in municipal courts.

Rule 44 was amended in 1983, effective September 1, 1983, to add the words "in the courts of this state" in each of the first two sentences to make it clear that the appointment of counsel for indigent defendants at public expense is required only in proceedings through appeal in the courts of North Dakota.

We decide DuPaul's claim of entitlement to "free" counsel under this rule.

In the prosecution's appeal of the earlier dismissal of these criminal charges, where DuPaul appeared without counsel, we explained that DuPaul had been ·appointed counsel several times, had dismissed one attorney, had attempted to dismiss another who was allowed to withdraw, and had requested yet another attorney be appointed. *State v. DuPaul*, 509 N.W.2d at 272 n. 7. In that case, we also refused to appoint another attorney to handle DuPaul's appeal, but DuPaul received appointment of an attorney on remand after that decision.[2]

At a pretrial hearing after remand, the prosecution informed the trial court that it would not seek imprisonment for DuPaul. DuPaul's appointed attorney then withdrew, and the trial court denied DuPaul's repeated motions for appointment of counsel at state

---

2. The trial court appointed Edward Bosch as counsel for DuPaul on June 28, 1991, to defend the criminal charges. DuPaul, stating that he did not trust lawyers, wanted to proceed pro se with Bosch assisting. DuPaul requested numerous motions be filed, had a falling out with Bosch, and requested a different attorney on September 23, 1991. On December 29, 1992, the trial court dismissed the charges against DuPaul, with Bosch still acting as DuPaul's attorney. The State appealed, and on March 8, 1993, Bosch was allowed to withdraw. The trial court told DuPaul that he would not receive another counsel until he made a proper motion.

On May 13, 1993, the trial court requested that DuPaul submit a list of attorneys that would be acceptable to him, reminding him that he would be responsible to pay the attorney. On July 2, the trial court appointed James Nostdahl as DuPaul's counsel. On August 3, Nostdahl was allowed to withdraw, because DuPaul notified him that, if reimbursement was sought, DuPaul did not want Nostdahl to represent him. DuPaul requested another appointment, and on August 19, 1993, Nostdahl was reappointed. DuPaul requested and was denied the appointment of two additional attorneys, when the trial court told him that one was enough. On September 3, DuPaul, claiming that his needs were not being met, notified Nostdahl and Mark Hays, an attorney associated with Nostdahl, that he had not accepted them as counsel. Nostdahl was again allowed to withdraw.

We reversed the dismissal of the charges against DuPaul and remanded for trial in *State v. DuPaul*, 509 N.W.2d 266, on December 9, 1993. On January 12, 1994, as requested by DuPaul, Hays was reappointed as counsel, but was limited by the trial court to the issues on remand. After the pretrial hearing at which the prosecution notified the trial court that it would not seek imprisonment, Hays was allowed to withdraw as counsel on February 3, 1994. The trial court denied all further requests by DuPaul for appointed counsel because no prison term was sought and there was no mandatory prison term for the offenses. The jury found DuPaul guilty of both offenses. DuPaul's post-appeal motions for an extension for his appeal and for appointed counsel are the subjects of this appeal.

expense because no imprisonment was sought or mandated. The court also reasoned that DuPaul "has not provided the Court with sufficient information for the Court to determine if [he] is indigent. The Court has repeatedly informed [DuPaul] of the requirements for such an appointment.... [DuPaul] has not satisfied the Court that [he] is indigent. The [prior] appointment was made in this case because [he] was not able to secure the services of an attorney because of who he is or the type of case, not because he is indigent."

DuPaul continues to claim that NDRCrimP 44 allows him appointed "counsel AT ALL STAGES whether incarceration is at stake or not." DuPaul demands that this "case should be dismissed immediately or remanded to the lower court to appoint free counsel directing both court and counsel to dismiss without fees, costs or any other penalties...."

■ The relevant rule of criminal procedure plainly says that it is "every indigent defendant" who is "entitled to have counsel appointed at public expense." NDRCrimP 44. It is not "every defendant," but only "every indigent defendant," who is entitled. DuPaul did not prove his indigency.

■ Instead, DuPaul claimed that some vague right to "financial privacy" negated any duty to prove indigency. On this appeal, DuPaul declares: "Privacy and counsel are absolute rights." But neither are. The trial court explicitly gave DuPaul an opportunity to have his proof of indigency sealed or to submit the sworn information *in camera*. *See State, County of Cass v. Gruchalla,* 467 N.W.2d 451, 455–56 (N.D.1991) (allowing proof of indigency *in camera* for appointment of counsel at public expense when financial disclosures might otherwise self-incriminate the accused). DuPaul refused both opportunities, and failed to file the necessary affidavit of indigency despite repeated invitations by the trial court. *See State v. Jensen,* 241 N.W.2d 557, 561 (N.D.1976) ("In the absence of a statement of assets, we can give little consideration to a statement of liabilities."). Without adequate proof of indigency, the court did not act unreasonably in denying appointed counsel even if DuPaul truly believed he was too poor to hire his own lawyer.

■ What's more, the prosecution informed the trial court that it would not seek imprisonment, and the trial court recognized that no prison term was mandated for DuPaul's misdemeanor charges. When the potential sentence will not include imprisonment, NDRCrimP 44 clearly says that an accused is not entitled to appointment of counsel at public expense. *See Argersinger v. Hamlin,* 407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32 L.Ed.2d 530 (1972) ("absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial"); *Scott v. Illinois,* 440 U.S. 367, 373–74, 99 S.Ct. 1158, 1162, 59 L.Ed.2d 383 (1979) ("the Sixth and Fourteenth Amendments to the United States Constitution require only that no indigent criminal defendant be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense"). For this additional reason, the trial court did not act arbitrarily in refusing to appoint counsel for DuPaul before the trial.

■ But even someone who is not indigent would be entitled to appointment of counsel if he is otherwise unable to find an attorney to help him, but such an appointment must be at his own expense, not the public's. The relevant rule directs: "The court shall appoint counsel to represent a defendant at the defendant's expense if the defendant is unable to secure the assistance of counsel and is not indigent." NDRCrimP 44 (part). While DuPaul was not entitled to appointed counsel at public expense, he may have been entitled to court-appointed counsel at his own expense if he was otherwise unable to locate one to assist him. The trial court recognized this duty, but that was not what DuPaul wanted. If reimbursement was to be sought, DuPaul didn't want to pay. The law is not that generous to a criminal defendant. DuPaul wanted a "free" attorney without any effort to prove that he needed one.

Moreover, the trial court reasonably tried to comply with DuPaul's requests for a court-appointed counsel. DuPaul repeatedly received an appointed counsel subject to reimbursement, but either dismissed him, rejected his advice, or refused to work with him. The trial court has no duty to appoint a specific counsel, or to continually seek new counsel for a capricious and difficult defendant. *In Interest of J.B.*, 410 N.W.2d 530, 532 (N.D.1987) ("the matter of substitution of appointed counsel is committed to the sound discretion of the trial court and, absent a showing of good cause for the substitution, a refusal to substitute is not an abuse of discretion"). *See also State v. Hoffman*, 224 Neb. 830, 401 N.W.2d 683, 686 (1987): " ' "The right of an indigent defendant to have counsel does not give him the right to be represented by counsel of his own choosing, and mere distrust of, or dissatisfaction with, appointed counsel is not enough to secure the appointment of substitute counsel. . . ." ' " (quoting from several of its prior opinions). When a new counsel would be faced with the same unreasonable expectations of a disagreeable defendant, it is appropriate for the trial court to deny repetitious and frivolous requests for appointment of a substitute counsel. *State v. Lang*, 463 N.W.2d 648, 650 (N.D.1990). There was no arbitrary denial of counsel here.

The decision on a motion to extend the time to file an appeal for excusable neglect is within the sound discretion of the trial court. *State v. Latendresse*, 450 N.W.2d 781, 782 (N.D.1990). We will not reverse that decision unless the trial court acted arbitrarily, unconscionably, or unreasonably. *Id.*

"To establish excusable neglect under Rule 4, N.D.R.App.P., a party must 'show the trial court that unique or extraordinary circumstances caused [that party] to not file a timely notice of appeal.' " *K & K Implement v. First Nat'l Bank*, 501 N.W.2d 734, 737 (N.D.1993), *quoting Hagert v. Hatton Commodities, Inc.*, 421 N.W.2d 473, 475 (N.D.1988). No unique circumstances were shown here.

In his "Motion For Excusable Neglect" to the trial court, DuPaul asserted that he received "[n]o notice or copy of judgment date," that he received "[n]o equal protection" because, if he had been given counsel, counsel would have timely filed the appeal, and that his "notice of appeal was mailed and postmarked [on] the proper date (May 9, 1994)." DuPaul also claimed he "was being legally battered by the Judicial System in another area" and had insufficient time to file the appeal. DuPaul blamed the "Court's/State's neglect and overall violation of fundamental rights" and proposed that *"[t]he Court and State are the excusable neglect."* DuPaul's blanket rationalization was that "[t]he reason for granting excusable neglect is not any one fact; it is the overall violation of Due Process, violation of privacy and civil rights."

In denying DuPaul's motion, the trial court pointed out "the defendant was notified of [the time for appeal] in open court" at his sentencing. Also, the prosecuting attorney directly explained to DuPaul on the record at the sentencing "that in a criminal case . . . notice of appeal by the defendant must be filed with the clerk of the trial court within ten days after the entry of judgment or order appealed from." The trial court ruled that "[t]he grounds for the motion show no excusable neglect." We agree. DuPaul was specifically notified of the deadline for appeal, and he alone failed to act timely.

DuPaul's notice of appeal was filed on May 10, one day late. The date the notice is filed, not the date it is signed or mailed, is the crucial date, and filing on the eleventh day after the entry of judgment is untimely. *State v. Guthmiller*, 497 N.W.2d 407, 408 (N.D.1993), merits decided after trial court found excusable neglect extended time for appeal, 499 N.W.2d 590 (N.D.1993); *State v. Franck*, 495 N.W.2d 60 (N.D.1993). As *Guthmiller* said, 497 N.W.2d at 408, timely filing is mandatory and jurisdictional, and cannot be waived by this court.

DuPaul's argument, that an appointed counsel would have timely filed the appeal, does not prove excusable neglect. As we have explained, DuPaul was not then entitled to appointed counsel. Beyond that, we have consistently held that a person act-

ing as his own attorney is equally bound by applicable rules of procedure, even if that person lacks understanding of those rules or the correct procedures. *Sandbeck v. Rockwell,* 524 N.W.2d 846, 851 (N.D.1994). *State v. Neigum,* 369 N.W.2d 375, 377 (N.D.1985), explained: "A defendant's pro se status does not relieve him of the requirement of strict compliance with procedural rules" on the ten-day limit for filing a criminal appeal.

DuPaul claims that he was preoccupied with other legal problems and should have been granted more time for that reason. This argument is simply unsatisfactory to excuse missing the deadline for so short a document. The trial court reasonably rejected DuPaul's arguments about excusable neglect, and the court did not abuse its discretion in denying his motion for an extension of time to file his appeal.

The trial court did not act arbitrarily, unconscionably, or unreasonably in denying DuPaul's motions for court-appointed counsel and for an extension of time to file his appeal from the criminal convictions. Therefore, we affirm both denials. We also dismiss DuPaul's untimely appeals from the jury convictions.

VANDE WALLE, C.J., and LEVINE, NEUMANN and SANDSTROM, JJ., concur.