2007 ND 22

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Paul A. FISCHER, Defendant and Appellant.**

**No. 20060153.**

Supreme Court of North Dakota.

Feb. 28, 2007.

Brian D. Grosinger, Assistant State's Attorney, Mandan, ND, for plaintiff and appellee.

Paul A. Fischer, James River Correctional Center, Jamestown, ND, Pro se.

VANDE WALLE, Chief Justice.

[¶ 1]   Paul A. Fischer appealed from a district court order denying his motion for an extension of time to file the notice of appeal and quashing his notice of appeal filed on May 2, 2006. We conclude the district court abused its discretion when it denied Fischer's motion for an extension of time, and we reverse.

I

[¶ 2]   On November 30, 2004, the State charged Fischer with three drug-related felonies and criminal trespassing. After his arrest on these charges, Fischer applied for and received a court-appointed attorney. Several days later, Fischer requested the withdrawal of his court-appointed attorney and sought to represent himself. The district court denied this request and required Fischer to be represented by counsel. Over the course of the next nine months, Fischer discharged three court-appointed attorneys, claiming that they were ineffective and failed to communicate with him. At this point, the district court permitted Fischer to proceed without counsel, but it required him to retain a court-appointed attorney in an advisory capacity.

[¶ 3]   On February 23, 2006, Fischer was tried before a jury and convicted of manufacture of a controlled substance, possession of a controlled substance with intent to deliver, and possession of meth-amphetamine-related drug paraphernalia. On March 3, 2006, the district court sentenced Fischer to lengthy prison terms on each of the three counts. Fischer was sentenced to twenty years in prison, with eleven years suspended for a period of five years, on the manufacturing count. He was sentenced concurrently to twenty years in prison, with eleven years suspended for a period of five years, for possession with intent to deliver. Finally, he was sentenced concurrently to five years in prison for possession of drug paraphernalia. After the criminal judgment was entered, Fischer was transferred to the North Dakota State Penitentiary in Bismarck.

[¶ 4]   After his transfer to the State Penitentiary, Fischer continued to represent himself with the apparent intention of appealing his conviction. On April 19, 2006, the clerk of district court filed Fischer's amended order for transcripts. The State moved to quash the amended order for transcripts, arguing that Fischer never filed a notice of appeal with the clerk of district court as required to initiate the appeal process. In its motion to quash, the State acknowledged it had received a notice of appeal from Fischer dated March 28, 2006. On April 24, 2006, the district court denied Fischer's request for transcripts because no notice of appeal had

been filed with the clerk before the time for appeal expired.

[¶ 5] On April 28, 2006, Fischer mailed a motion to the district court requesting an extension of time to file the notice of appeal under N.D.R.App.P. 4(b)(4). In his motion requesting an extension, Fischer claimed that, if given additional time, he could prove that he had mailed the notice of appeal to the clerk of district court from the State Penitentiary on March 28, 2006. Specifically, Fischer claimed that an employee at the State Penitentiary had notarized his documents and could verify that a copy of the notice of appeal had been made for the clerk. However, because he had recently been moved to another correctional center in Jamestown, Fischer did not have immediate access to the State Penitentiary employees who had helped him. Fischer also served a new notice of appeal with the motion requesting an extension. On May 2, 2006, the clerk of district court filed the motion requesting an extension and the new notice of appeal. On May 5, 2006, the district court issued an order denying Fischer's motion for an extension of time to file the notice of appeal and quashing the notice of appeal that was filed on May 2. The district court did not provide any explanation for its denial of Fischer's motion.

## II

■ [¶ 6] We review a district court's decision on a motion to extend the time to file an appeal for an abuse of discretion. *State v. Jones,* 2002 ND 163, ¶ 5, 652 N.W.2d 369. A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. *Redfield v. Bitterman,* 2000 ND 217, ¶ 7, 620 N.W.2d 570. Appellate courts often give more leeway to a district court's decision to grant an extension of time than they give to a district court's refusal to do so. *Midwest Employers Cas. Co. v. Williams,* 161 F.3d 877, 879 (5th Cir.1998)

(citing 16A Charles Alan Wright et al., *Federal Practice and Procedure* § 3950.3 (2d ed.1996)); *cf. Ceartin v. Ochs,* 479 N.W.2d 863, 865 (N.D.1992) (stating that an order granting a new trial is subject to more limited appellate review than an order denying a new trial). An order granting an extension is entitled to more deference because it does not terminate the proceeding. *Cf. Ceartin,* at 865.

■ [¶ 7] "In a criminal case, a defendant's notice of appeal must be filed with the clerk of district court within 30 days after the entry of the judgment or order being appealed." N.D.R.App.P. 4(b)(1)(A). However, the district court may extend the time to file the notice of appeal in a criminal case under N.D.R.App.P. 4(b)(4). Rule 4(b)(4) provides:

> Upon a finding of excusable neglect or good cause, the district court may—before or after the time has expired, with or without motion and notice—extend the time to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this subdivision.

Therefore, the district court must find that either excusable neglect or good cause exists before granting an extension of the time for appeal. *See Jones,* 2002 ND 163, ¶ 7, 652 N.W.2d 369.

■ [¶ 8] Under this Court's precedent, the "excusable neglect" standard is well established. *See, e.g., Redfield,* 2000 ND 217, ¶ 7, 620 N.W.2d 570; *State v. DuPaul,* 527 N.W.2d 238, 243 (N.D.1995). In order to establish excusable neglect, a party must show that unique or extraordinary circumstances caused the delay in filing the notice of appeal. *Redfield,* at ¶ 7, 620 N.W.2d 570; *see also Leftbear v. State,* 2007 ND 14, ¶ 9, 727 N.W.2d 252 (explaining the excusable neglect standard).

[¶ 9] However, we have never addressed the "good cause" standard, which is an alternate basis for granting an extension of time under the plain language of the rule. *See* N.D.R.App.P. 4(b)(4). Because N.D.R.App.P. 4 is derived from Rule 4 of the Federal Rules of Appellate Procedure, we may look to the interpretation of "good cause" under the federal rule as a guide. *See Hagert v. Hatton Commodities,* 421 N.W.2d 473, 475 (N.D.1988). Although no federal court has explicitly defined the meaning of good cause under Rule 4, the good cause standard is generally seen as more lenient than the excusable neglect standard. *See* 20 James Wm. Moore et al., *Moore's Federal Practice* ¶ 304.14[2][b] (3d ed.2006); 16A Charles Alan Wright et al., *Federal Practice and Procedure* § 3950.3 (3d ed.1999). The most helpful discussion of the good cause standard is found in the Advisory Committee Notes to Rule 4, F.R.App.P. The Advisory Committee states:

The good cause and excusable neglect standards have "different domains." *Lorenzen v. Employees Retirement Plan,* 896 F.2d 228, 232 (7th Cir.1990). They are not interchangeable, and one is not inclusive of the other. The excusable neglect standard applies in situations in which there is fault; in such situations, the need for an extension is usually occasioned by something within the control of the movant. The good cause standard applies in situations in which there is no fault—excusable or otherwise. In such situations, the need for an extension is usually occasioned by something that is not within the control of the movant.

Thus, the good cause standard can apply to motions brought during the 30 days following the expiration of the original deadline. If, for example, the Postal Service fails to deliver a notice of appeal, a movant might have good cause to seek a post-expiration extension. It may be unfair to make such a movant prove that its "neglect" was excusable, given that the movant may not have been neglectful at all. Similarly, the excusable neglect standard can apply to motions brought prior to the expiration of the original deadline. For example, a movant may bring a pre-expiration motion for an extension of time when an error committed by the movant makes it unlikely that the movant will be able to meet the original deadline.

Advisory Committee Notes, 2002 Amendments, F.R.App.P. 4.

[¶ 10] Whether the movant seeks an extension for excusable neglect or good cause, we have generally held that the movant must support the request for an extension with affidavits or other evidence. *See State v. Jones,* 2002 ND 163, ¶ 7, 652 N.W.2d 369 (holding that the district court did not abuse its discretion in denying Jones's motion for an extension because of his complete failure to make any showing of excusable neglect); *Nastrom v. Nastrom,* 1998 ND 75, ¶ 8, 576 N.W.2d 215 (holding that the district court did not abuse its discretion in denying the movant's request for an extension because her claim of excusable neglect was not reasonably supported by the evidence). However, in *Jones* and *Nastrom,* the movants were not self-represented prisoners. *See Jones,* at ¶ 7, 652 N.W.2d 369 (involving a criminal defendant represented by counsel); *Nastrom,* at ¶ 7, 576 N.W.2d 215 (involving a party in a civil case who was represented by counsel).

[¶ 11] Although Fischer proceeded without counsel by choice, a right granted by the United States Constitution, *see, e.g., State v. Ochoa,* 2004 ND 43, ¶ 15, 675 N.W.2d 161, his case nevertheless illustrates the difficulty that self-represented prisoners may have in gathering evidence to support a motion for an extension

of time. At the time Fischer moved for an extension, he was being housed at a correctional facility in Jamestown. In his motion, he requested additional time to collect evidence because he did not have easy access to the State Penitentiary employees who assisted him when he prepared his first notice of appeal. The district court denied Fischer's request for additional time to gather evidence without explanation. Therefore, Fischer was able to offer only his own account of the events that led to his delayed filing of the notice of appeal. However, Fischer's claim that he attempted to file a notice of appeal within the original 30–day deadline is supported by the State's admission that it received a notice of appeal from Fischer dated March 28, 2006.

[¶ 12] Based on Fischer's account of events and the State's receipt of a notice of appeal, there are at least two logical possibilities. The first is that Fischer mailed a notice of appeal to the clerk of district court at the time he mailed a notice of appeal to the State's Attorney, but the notice sent to the clerk was lost in the mail. The second is that Fischer mailed a notice of appeal only to the State's Attorney because he thought that would be sufficient to initiate the appeal. Without a contrary finding by the district court, we are inclined to believe Fischer's claim that the notice of appeal intended for the clerk was lost in the mail, especially in light of the fact that Fischer previously appealed from an order denying a motion to dismiss in this same case, which shows familiarity with the proper procedure for filing an appeal. Under the facts of this case, we conclude the district court abused its discretion when it denied Fischer's motion for an extension under the good cause standard, and we do not reach the excusable neglect issue.

[¶ 13] Fischer's status as a self-represented prisoner is an important fact in this case. Although we have held that a person acting as his own attorney is equally bound by the rules of procedure, see, e.g., State v. DuPaul, 527 N.W.2d 238, 243–44 (N.D.1995), we also recognize the unique situation presented by self-represented prisoners seeking to appeal their criminal convictions. See Houston v. Lack, 487 U.S. 266, 270–72, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). In Houston v. Lack, the United States Supreme Court explained the process that self-represented prisoners must follow:

> Such prisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the 30–day deadline. Unlike other litigants, pro se prisoners cannot personally travel to the courthouse to see that the notice is stamped "filed" or to establish the date on which the court received the notice. Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the pro se prisoner is forced to do so by his situation.... Unskilled in law, unaided by counsel, and unable to leave the prison, his control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access—the prison authorities—and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice.

Id.

[¶ 14] As a self-represented prisoner, Fischer had no choice but to rely on mail delivery of his notice of appeal. If Fischer mailed his notice of appeal to the clerk of district court, as he claims, but the notice was lost in the mail, this was good cause

for granting an extension based on circumstances beyond Fischer's control. Indeed, the "lost in the mail" scenario is specifically mentioned in the Advisory Committee Notes to F.R.App.P. 4 explaining the good cause standard. In light of Fischer's status as a self-represented prisoner and his dependence on mail delivery of the notice of appeal, the district court unreasonably denied Fischer's motion for an extension based upon good cause.

■ [¶ 15] We do not hold that service on the State's Attorney was sufficient to initiate the appeal. However, because Fischer is a self-represented defendant serving a considerable prison term, the district court should have considered the notice of appeal received by the State as evidence of Fischer's intent to appeal. Faced with this evidence that Fischer, on his own behalf, attempted to file an appeal of his conviction within the original 30–day deadline, the district court unreasonably denied Fischer's motion for an extension. The district court should not lightly deny a self-represented prisoner's request for an extension to file a direct appeal in a criminal case, particularly when the prisoner has been sentenced to a lengthy prison term and has filed the motion for an extension within the 30–day extension period. *See United States v. Simms,* 46 Fed.Appx. 63, 65–66 (3d Cir.2002).

■ [¶ 16] Importantly, we note the district court summarily denied Fischer's motion for an extension without any explanation. If the district court does not provide an explanation for its decision to grant or deny an extension, we are more likely to find that the district court abused its discretion. *See Schaan v. Magic City Beverage Co.,* 2000 ND 71, ¶¶ 26–27, 609 N.W.2d 82 (finding that the district court abused its discretion in granting an extension of time to file the notice of appeal when the court's order contained no reasoning in support of its conclusion); *see*

*also In re Diet Drugs Prods. Liab. Litig.,* 401 F.3d 143, 154 (3d Cir.2005) (holding that the district court abused its discretion when it found no excusable neglect without any reasoning). Here, the district court's order did not refer to the good cause or excusable neglect standards, much less explain why it found that those standards were not met in this case. Furthermore, the district court did not explain why Fischer was not given additional time to collect evidence of good cause or excusable neglect in support of his motion. We conclude this was not a proper exercise of the district court's discretion, especially in light of the fact that Fischer is a self-represented prisoner and the district court had some evidence before it of Fischer's previous unsuccessful attempt to file an appeal.

[¶ 17] Other considerations also support our conclusion that the district court abused its discretion in denying Fischer's motion for an extension. First, the State is not prejudiced because it was aware of Fischer's intent to appeal when it received a copy of the first notice of appeal in the mail. Second, when Fischer learned that his first notice of appeal was not filed, he expeditiously filed a motion for an extension under N.D.R.App.P. 4(b)(4). Third, the district court's order denying an extension terminates the appeal, and thus it is reviewed more closely than an order granting an extension. *Cf. Ceartin v. Ochs,* 479 N.W.2d 863, 865 (N.D.1992). Finally, we generally prefer to hear appeals on their merits, and a review of the substantive issues is warranted here in light of the seriousness of the conviction and the sentence imposed. *See State v. Lewis,* 300 N.W.2d 206, 209–10 (N.D.1980); *Liebelt v. Saby,* 279 N.W.2d 881, 884 (N.D.1979).

III

[¶ 18] Based on the particular facts of this case, we conclude the district court's

denial of Fischer's motion for an extension of time to file the notice of appeal was an abuse of discretion under the good cause standard. The district court's order is reversed.

[¶ 19] CAROL RONNING KAPSNER, and MARY MUEHLEN MARING, JJ., concurs.

CROTHERS, Justice, dissenting.

[¶ 20] I respectfully dissent.

[¶ 21] The time limit for filing a notice of appeal is mandatory and jurisdictional, and cannot be waived by the supreme court. *See, e.g., State v. Guthmiller,* 497 N.W.2d 407 (N.D.1993). The supreme court may not extend the time to file a notice of appeal in this case. N.D.R.App.P. 26(b); *cf.* N.D.C.C. § 27–20–05 (supreme court may extend time for appeal under Juvenile Court Act). Here, the district court has exclusive jurisdiction to act on all motions for extensions of time to file the notice of appeal. N.D.R.App.P. 26(b).

[¶ 22] "In a criminal case, a defendant's notice of appeal must be filed with the clerk of district court within 30 days after the entry of the judgment or order being appealed." N.D.R.App.P. 4(b)(1)(A). The district court may extend the time to file the notice of appeal under these circumstances:

> Upon a finding of excusable neglect or good cause, the district court may—before or after the time has expired, with or without motion and notice—extend the time to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this subdivision.

N.D.R.App.P. 4(b)(4).

[¶ 23] Prior to this case, we have not addressed the "good cause" standard for granting an extension of time (adopted in the 2003 amendment to Rule 4). In this case of first impression, I expected the majority would require affidavits or other competent evidence to support Fischer's request for an extension of time, just as such evidence is required to establish "excusable neglect." *See Redfield v. Bitterman,* 2000 ND 217, ¶ 7, 620 N.W.2d 570. This Court has rejected claims of excusable neglect when the movant failed to offer affidavits or evidence in support of that claim. *See State v. Jones,* 2002 ND 163, ¶ 7, 652 N.W.2d 369 (holding that the district court's denial of Jones's motion for an extension of time was not an abuse of discretion because of his complete failure to make any showing of excusable neglect); *Nastrom v. Nastrom,* 1998 ND 75, ¶ 8, 576 N.W.2d 215 (holding that the district court did not abuse its discretion in denying the movant's request for an extension because her claim of excusable neglect was not reasonably supported by the evidence).

[¶ 24] In any proceeding "we have consistently held that a person acting as his own attorney is equally bound by applicable rules of procedure, even if that person lacks understanding of those rules or the correct procedures." *State v. DuPaul,* 527 N.W.2d 238, 243–44 (N.D.1995). " 'A defendant's pro se status does not relieve him of the requirement of strict compliance with procedural rules.' " *Id.* (quoting *State v. Neigum,* 369 N.W.2d 375, 377 (N.D.1985)).

[¶ 25] One rule applicable to Fischer and all others who attempt to appeal is N.D.R.App.P. 30(a)(1), which provides: "Only items in the record may be included in the appendix." Items not in the district court's record but placed in the appendix and brought before this Court are not considered. *Oien v. Oien,* 2005 ND 205, ¶ 11, 706 N.W.2d 81. Because an appeal is to be determined upon the district court's record, we do not consider evidence or arguments presented for the first time on appeal. *Id.*

[¶ 26] Notwithstanding our unambiguous rule and clear case law, Fischer's appendix contains important documents that were not part of the record below and, therefore, were not seen by the district court. The documents include:

1. June 30, 2006 letter from Attorney Thomas J. Glass to Fischer regarding untimely notice of appeal and services provided to Fischer

2. Notice of appeal dated March 28, 2006, and stamped "Received March 30, 2006" by the State's Attorney's office

3. Fischer's order for transcripts dated March 28, 2006

4. Attorney's Certificate of Service dated March 28, 2006 and signed by Fischer regarding service of Notice of Appeal and Order for Transcripts on State's Attorney

[¶ 27] The record—or more accurately, the lack of record—is highly problematic for Fischer because it does not include a copy of the first notice of appeal which Fischer claims to have mailed to the clerk of court but was never received. The record does not contain any form of proof of service of the first notice of appeal on the clerk of court. Indeed, those documents are not even present in Fischer's improperly augmented Appendix.

[¶ 28] The record does contain the State's admission that it received a notice of appeal from Fischer dated March 28, 2006. However, the State's copy of the notice of appeal was not part of the district court's record. The result is that the district court had no evidence of the date on which the State's Attorney received Fischer's first notice of appeal or the order for transcript.

[¶ 29] I do not condone the district court's failure to explain why it denied Fischer's requested relief. Nevertheless, looking only at the documents available to the district court when it denied Fischer's

Motion for Extension of Time on May 9, 2006, we are left with Fischer's April 19, 2006 Notice of [Motion for] Amended Order for Transcripts and the Stipulation to Amend Order for Transcripts and Certificate of Service; the State's April 21 Motion to Quash Order for Transcripts; Fischer's Motion and Brief for an Extension of Time and his [second] Notice of Appeal and Certificate of Service by Mail filed on May 2, 2006; and the State's May 3, 2006 Brief resisting Fischer's motion for extension of time. As indicated above, the State admits in its May 3 brief that it received Fischer's first notice, but it did not say when the document was received. Those details were supplied in Fischer's un-sworn filings.

[¶ 30] North Dakota law has long held that motions cannot be granted without the support of competent evidence and that statements in motions or briefs do not constitute evidence. *Medd v. Fonder*, 543 N.W.2d 483, 486–87 (N.D.1996). We are therefore required in this case to disregard Fischer's arguments and use only proper evidence to measure whether the district court abused its discretion. Doing so, we are left with the bare fact that on an unknown date the State received a notice of appeal dated March 28, 2006, and that on April 19, 2006 Fischer filed a motion or purported "order" relating to transcripts.

[¶ 31] This record simply does not support a conclusion the district court abused its discretion. After stripping away the improper records in Fischer's appellate appendix, and after disregarding the argument in Fischer's brief, the scant remaining evidence provides no basis for finding Fischer's failure to timely file his notice of appeal should be excused for good cause. Instead, we have the unexplained conclusion that a notice of appeal dated March 28 was sent to the State's Attorney and that the Clerk of the District Court did not

receive the same notice. Without more, I cannot agree the district court's actions were arbitrary, unreasonable or unconscionable.

[¶ 32] Finally, the Majority makes much of Fischer's status as an unrepresented prisoner and the resulting difficulties Fischer might have in complying with the requirements for perfecting an appeal. I am mindful of the constraints placed on a self-represented inmate, but do not agree that they can become a lawful justification which excuses compliance with the Rules of Appellate Procedure and our case law. To the contrary, not only are pro se criminal defendants held to the same standard as practicing attorneys, but those defendants are required to have been warned of the dangers and disadvantages of self-representation. This Court has addressed the issue by stating:

> In *Faretta v. California*, 422 U.S. 806, 818–21, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the United States Supreme Court held criminal defendants have a corollary right under the Sixth Amendment to conduct their own defense. [*City of Fargo v.] Rockwell*, 1999 ND 125, ¶ 8, 597 N.W.2d 406; [*State v.] Poitra*, 1998 ND 88, ¶ 8, 578 N.W.2d 121; [*State v.] Harmon*, 1997 ND 233, ¶ 16, 575 N.W.2d 635; *State v. Hart*, 1997 ND 188, ¶ 6, 569 N.W.2d 451. Criminal defendants who proceed pro se necessarily relinquish many of the benefits associated with the right to counsel, and in order to proceed pro se, they must voluntarily, knowingly, and intelligently relinquish the benefits of counsel. *Rockwell*, at ¶ 8, 597 N.W.2d 406. A defendant need not have the skill and experience of a lawyer to competently and intelligently choose self-representation, but the defendant should be aware of the dangers and disadvantages of self-representation so the record establishes the choice is made with eyes open. *Faretta*, at 835, 95 S.Ct. 2525.

An unavoidable tension exists between the right to counsel and the right to self-representation, because asserting one right necessitates a waiver of the other. In recent years, we have become increasingly involved with the tension between those mutually exclusive rights. In *Harmon*, 1997 ND 233, ¶ 23 n. 1, 575 N.W.2d 635, we acknowledged increasing problems with defendants who proceed pro se, and suggested "[t]rial courts should be careful to make specific on-the-record determinations about whether a defendant unequivocally, knowingly, and intelligently waived either his right to counsel or self-representation. Such a determination should make clear the dangers and disadvantages of self-representation." *State v. Dvorak*, 2000 ND 6, ¶¶ 10–11, 604 N.W.2d 445.

[¶ 33] In addition to the "dangers and disadvantages of self-representation" outside a penal institution, inmate litigants are subject to even greater constraints once inside prison. Of course, our starting point is that an inmate must be provided with " 'meaningful access' to the courts." *Bounds v. Smith*, 430 U.S. 817, 823, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Yet, a prison "may place reasonable restrictions on an inmate's right to legal materials or legal assistance based on the institution's legitimate interest in security." *Cooper v. Corderman*, 809 S.W.2d 11, 13–14 (Mo. App.1991) (citing *Williams v. Wyrick*, 747 F.2d 1231, 1232 (8th Cir.1984)). And an inmate's "right to present and prepare legal matters is one which he must exercise in a reasonable manner, and within the institution's rules concerning inmates' possessions." *Konigsberg v. Ciccone*, 285 F.Supp. 585, 599 (D.Mo.1968), *aff'd* 417 F.2d 161 (8th Cir.1969), *cert. denied*, 397 U.S. 963, 90 S.Ct. 996, 25 L.Ed.2d 255 (D.Mo.1970). The ability to prepare and present legal matters is also hindered by

the very real limitation that an inmate does not have a free and unfettered ability to call the court, and does not have any ability to personally deliver papers to the court or to personally examine documents and records at the courthouse.

[¶ 34]   These are all limitations Fischer knew about and accepted when he exercised his right to proceed pro se.   Having made the decision to represent himself after conviction and after incarceration, Fischer cannot complain now he has been prejudiced by the limitations on his ability to conduct his legal affairs that exist exclusively due to his physical confinement in a penal institution.   As a result, and based on the record in this case, I am compelled to conclude the district court did not abuse its discretion by denying Fischer's motion for an extension of time to file his notice of appeal.   I would affirm the district court's order.

[¶ 35] DALE V. SANDSTROM, J., concurs.